'IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Varren King | ) |
| | ) |
| *Plaintiff,* | ) |
| | )    21-cv- |
| *-vs-* | ) |
| | ) |
| Thomas Dart, Sheriff of Cook | ) |
| County, Correctional Officer R. Szul, | ) |
| and Cook County, Illinois, | ) |
| | ) |
| *Defendants.* | ) |

Plaintiff Varren King, by counsel, alleges as follows:

1.      This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is conferred by 28 U.S.C. § 1343.

2.      Plaintiff Varren King is a resident of the Northern District of Illinois presently detained at the Cook County Jail. The Sheriff's records show plaintiff was processed into the Jail on June 22, 2017 under booking number 2017-0622020.

3.      Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity only.

4.      Defendant Correctional Officer D. Szul (star #17162), at all relevant times, was employed by the Sheriff's Office and was assigned as the "tier officer" for Tier 3H in Division 9 on March 29, 2019 on the 3:00 pm to 11:00 pm shift.  He is sued in his individual capacity.

5.      Defendant Cook County is joined in this action pursuant to *Carver v. Sheriff of LaSalle County,* 324 F.3d 947 (7th Cir. 2003), and is responsible for allocating funds for the Sheriff's budget.

6.      The Sheriff's Office has known since at least 2017 that Division 9 is one of the most dangerous divisions at the Jail. It holds maximum security detainees and there have been systemic barriers staffing the division.

7.      In 2017 the Sheriff's Office issued a Staffing Analysis explaining:

> Division 9 has more batteries to staff, masturbators, and use of force than any other divisions. It is one of the least-coveted divisions to work in so many of its staff have little seniority and are inexperienced. Mandated overtime is more common in Division 9 than any other division.

8.      At all times relevant defendant Cook County has refused to allocate sufficient funds for defendant Sheriff to adequately staff Division 9. The grossly deficient staffing leaves the Sheriff's Office unable to adequately supervise detainees.

9.      For example, the "tier officer" is required to conduct a "30-minute security check" pursuant to Sheriff's policy. This requires the officer to inspect the tier, make sure cell doors are locked, and inspect the bathroom.  A "tier officer" must have a backup officer present to conduct a "security check."

10.     Inmates face unnecessary danger if a "security check" is not conducted.

11.     Because of grossly deficient staff it is common in Division 9 for a "tier officer" to recruit another "tier officer" to serve as backup for the "security check." This causes a huge gap in security because it is very dangerous when Division 9 inmates are in the dayroom unsupervised by the "tier officer."

12.     Indeed, the Sheriff's formal policy requires a "tier officer" to perform "direct supervision" when inmates are in the dayroom.

13.     It is common in Division 9 for 20 to 40 maximum security inmates to be unsupervised in the dayroom for a prolonged period of time when the "tier officer" leaves to serve as backup so that another "tier officer" is able to perform a "security check." Between 2017 and 2019 there have been many occasions when inmates are seriously injured when the "tier officer" leaves the tier unsupervised.

14.     The Sheriff and Cook County are aware of this gap in security and that inmates have been seriously injured because of *Chew-Harris v. Dart*, 17-cv-4958, where an inmate was seriously injured on May 16, 2017 when the "tier officer" left the tier unsupervised to serve as backup for another "tier officer" to conduct a "security check."

I.     **Claims against defendant Szul**

15.     As the "tier officer" for 3H on March 29, 2019, defendant Szul was responsible for the safety and security of all inmates assigned to Tier 3H.

16.     Defendant Szul knew as the 3H "tier officer" he was required to perform "direct supervision" when inmates were in the dayroom.

17.     At all relevant times, defendant Szul knew that leaving Tier 3H without relief would expose all inmates to an unreasonable risk of harm. He also knew it was particularly dangerous to leave 39 maximum security inmates in the dayroom unsupervised.

18.     At approximately 5:50 pm defendant Szul left his post as the 3H "tier officer" to provide backup for the 3G "tier officer." All 39 inmates were in the dayroom and knew the tier was unsupervised because it was obvious no officer

was stationed at the officer's post.

19.    At approximately 5:51 pm an inmate strikes plaintiff in the face in the dayroom of Tier 3H. This should have been observed by the 3H "tier officer" if he (or she) was directly supervising the tier.

20.    At approximately 5:58 pm the plaintiff is next to the microwave directly in front of the post for the 3H "tier officer." While plaintiff prepared food, the attack continues when the same inmate threw boiling water on plaintiff's body.  A screen shot of this incident is below:



21.    Defendant Szul returns to Tier 3H at about 6:22 pm and begins locking up some detainees. Plaintiff told Defendant Szul that he required medical attention because of severe burns and that he was in extreme pain.

22.    Although defendant Szul had the ability to facilitate medical attention for plaintiff, he took no action to request medical attention for plaintiff. Defendant Szul did not request medical attention because he knew it would trigger a formal investigation by the Sheriff and may result in discipline because

he left inmates in the "dayroom" without "direct supervision" for a prolonged period of time in direct violation of department policy.

23.     The refusal of defendant Szul to facilitate medical attention caused plaintiff to suffer unnecessary and gratuitous pain.

24.     Plaintiff waited until about 10:06 am on March 30, 2019 to be evaluated by Nurse Thomas who observed visible injury to the left side of plaintiff's face and described it as a "severe burn." Plaintiff was subsequently treated at Stroger for third degree burns.

25.     Plaintiff would not have been harmed or would have suffered less harm if defendant Szul did not abandon Tier 3H or had took action to facilitate medical attention for plaintiff.

## II.     **Municipal claim against Sheriff Dart and Cook County**

26.     Due to safety considerations, a "tier officer" may not enter a tier to conduct a "security check" without backup.  The Sheriff, however, is unable to designate staff to serve as backup for Division 9 "tier officers" because of grossly inadequate staffing.

27.     There is a widespread practice in Division 9 for the "tier officer" to abandon the tier and serve as backup for another "tier officer" to conduct a "security check." When this occurs, inmates are out of sight and hearing of the security staff.

28.     The assigned "tier officer" is unable to deter violence and is unable to be summoned for help should trouble erupt when he (or she) abandons the tier to provide backup for another "tier officer" to conduct a "security check."

29.     Policy makers for the Sheriff's Office know of this widespread practice and have failed to take reasonable steps to correction this significant security gap.

30.     Plaintiff was injured because Tier 3H was unsupervised at 5:51 pm when plaintiff was attacked in the dayroom. No correctional officer rendered aid to plaintiff because of the widespread practice in Division 9 for the "tier officer" to leave inmates unsupervised in the dayroom for a prolonged period.

31.     The attack resumed at 5:58 pm by the same inmate because it was obvious the tier was unsupervised because of the widespread practice of the "tier officer" to leave the dayroom unsupervised.

32.     Plaintiff was injured because of this widespread gap in security and would have suffered less harm if Tier 3H was under "direct supervision" when detainees were in the "dayroom."

33.     Policy makers for the Sheriff's Office know of this widespread practice by Division 9 "tier officers" and have failed to take reasonable measures to correct this significant security gap. Indeed, the "tier officer" for Tier 3H on March 30, 2019 acknowledge in a written report that there was "inadequate staffing/backup" to adequately perform the duties of the "tier officer."

34.     Defendants' above described policy or widespread equivalent practice was the moving force behind plaintiff's injuries and caused his rights secured by the Fourteenth Amendment to the United States Constitution to be violated.

35.     Plaintiff requests trial by jury on his claim for damages.

It is therefore respectfully requested that the Court grant appropriate compensatory damages as well as punitive damages against defendant Szul. Plaintiff also requests that the costs of this action, including attorney's fees, be taxed against defendant Cook County.

/s/  <u>Patrick W. Morrissey</u>
Patrick W. Morrissey
ARDC No. 6309730
Thomas G. Morrissey, Ltd.
10150 S Western Ave. Ste. Rear
Chicago, IL. 60643
(773) 233-7900
patrickmorrissey1920@gmail.com
*an attorney for plaintiff*