**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

VARREN KING,

        Plaintiff,

    v.

CORRECTIONAL OFFICER R. SZUL,

        Defendant.

Case No. 21 C 783

Honorable Sunil R. Harjani

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Varren King, a pretrial detainee in the custody of the Cook County Department of Corrections, brings this lawsuit pursuant to Title 18, United States Code, Section 1983. The Complaint concerns a March 29, 2019, incident, in which another detainee (Norvin Ortiz) struck King and threw hot coffee on him that caused third-degree burns. The prior district judge granted summary judgment on all claims to Defendants Thomas Dart, Sheriff of Cook County, Officer Szul, and Cook County, finding that King had failed to exhaust his administrative remedies. King appealed. The Seventh Circuit affirmed the grant of summary judgment on two counts: (1) the delayed medical treatment claim against Officer Szul; and (2) the *Monell* claim against Thomas Dart and Cook County. However, the appellate court reversed the district court's ruling on the failure to protect claim, finding that King was not required to exhaust the Jail's obscure grievance procedure before bringing that claim against Officer Szul in federal court. *See King v. Dart*, 63 F.4th 602, 609 (7th Cir. 2023). The only remaining Defendant, Officer Szul, has now filed a motion for summary judgment on that remaining claim. For the reasons explained below, the Court grants Szul's motion for summary judgment.

**Factual Background**

The Court construes the evidence in the summary judgment record and draws all reasonable inferences in King's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). King is a pretrial detainee in the custody of the Cook County Department of Corrections. PRDSOF ¶ 6.[1] Szul was an officer for Cook County Department of Corrections who was assigned to watch Tier 3H in Division 9 on March 29, 2019. *Id.* at ¶ 7. Cook County Department of Corrections has policies that an officer must "[c]onduct random physical security checks at least every 30 minutes" to assist in keeping the facility secure and ensure rules and regulations are being followed. DRPSOAF ¶¶ 1, 21.[2] Additionally, tier officers are supposed to maintain a visual when detainees are in the dayroom. *Id.* at ¶¶ 22, 25, 34.[3] The dayroom for Tier 3H serves as a living space where detainees are free to roam, use a microwave, and interact. *Id.* at ¶¶ 22-23.[4]

---

[1] The Court has taken the facts from the parties' Local Rule 56.1 statements. Unless otherwise noted, the above facts are not in dispute. The Court cites to Defendant's LR 56.1 statement of facts as "DSOF" and Plaintiff's response to Defendant's LR 56.1 statement of facts as "PRDSOF," Plaintiff's Statement of Additional Facts as "PSOAF," and Defendant's response to Plaintiff's statement of additional fact as "DRPSOAF." Defendant Szul argues in his reply brief that the Court should strike or disregard the majority of King's Statement of Additional Material Facts for failure to comply with Local Rule 56.1(d)(1). As a result, Szul does not substantively reply to these paragraphs but instead states: "Disputed, for the reason that this statement of fact is in material violation of local Rule 56.1[.]" The Court exercises its discretion and declines to strike or disregard the entirety of King's Statement of Additional Material Facts, but reviews each paragraph individually. The Court has read the underlying documents and takes all facts in the light most favorable to King.

[2] Szul objects to both paragraphs by stating: "Disputed, for the reason that this statement of fact is in material violation of local Rule 56.1 for the reasons set forth in Section I of Officer Szul's reply brief, which is incorporated by reference herein." The Court declines to strike or disregard these statements. Szul offers no reasoning or record support for why these facts are disputed. Reviewing the underlying documents, the Court finds that they support the facts as outlined by King.

[3] As in footnote two, Szul disputes these paragraphs because they violate Local Rule 56.1 but does not offer any reasoning or record support for why these facts are disputed. Again, the underlying documentation support the facts as outlined by King.

[4] Here again, Szul disputes paragraphs 22 and 23 because they violate Local Rule 56.1. Szul does not offer any reasoning or record support for why these facts are disputed. The underlying documentation support the facts as outlined by King and, as the non-moving party, the Court draws all inferences in King's favor.

On March 29, 2019, Szul did not perform a security check of the inmates in the dayroom at 5:48 p.m. and then proceeded to abandon his post for thirty-two minutes to provide backup to another officer – leaving Tier 3H unsupervised. *Id.* at ¶¶ 34, 35[5]; PRDSOF ¶ 14.[6]  While Szul was away from his post, King was struck by Norvin Ortiz. PRDSOF ¶¶ 14-16, 19.[7]  Ortiz also threw boiling water on King causing him injuries. *Id.* at ¶¶ 15-16.

Prior to this incident, King never had a conversation, disagreement, or altercation with Ortiz, nor was King ever threatened by Ortiz or any other individual in Tier 3H. *Id.* at ¶¶ 18, 21-23, 26-27.  In fact, King does not know why Ortiz hit him. *Id.* at ¶ 20.  Because there had been no prior concerns and King did not suspect any potential issue, King did not inform Szul or any other officer at the Cook County Department of Corrections that there was a threat to his safety before the incident. *Id.* at ¶¶ 25, 28-30.

### Discussion

King alleges that Szul failed to protect him by abandoning his post on March 29, 2019. Defendant Szul moves for summary judgment on this claim.  Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter" but rather

---

[5] Szul disputes paragraph 35 for the same reason as outlined in footnotes two, three, and four.  As noted in those footnotes, the Court has reviewed the underlying facts, draws all inferences in King's favor, and finds no factual or record support to contradict this paragraph.

[6] It is undisputed that King is alleging that Szul left Tier 3H unsupervised to provide backup to another officer.  There has also been no evidence introduced contrary to these allegations.

[7] King does not dispute that he is alleging another inmate struck him and threw boiling water on him, while Szul left his post to provide backup to another officer.  There has also been no evidence introduced contrary to these allegations.

determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. at 249.

The parties first dispute the elements of a failure to protect claim. Szul's opening brief asserts that the Court should use the elements as listed in Section 7.16 of the Seventh Circuit's Federal Civil Pattern Jury Instructions, which were updated in 2017. King disagrees. He argues that, in *Echols v. Johnson*, the Seventh Circuit found that the pattern jury instructions misstated the law and then articulated a corrected version of elements based on the Supreme Court's holding in *Kingsley v. Hendrickson*. *See Echols v. Johnson*, 105 F.4th 973, 976-77 (7th Cir. 2024) (*citing Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). Szul's reply does not disagree with King. Instead, Szul argues that King's claim still fails under the updated elements outlined by the Seventh Circuit. Looking at *Echols*, the Seventh Circuit held that Seventh Circuit Pattern Jury Instruction 7.16 was not updated to reflect or account for *Kingsley*. *See id.* at 976-77. *Echols* instructs district courts to instead follow the elements for a failure to protect claim as outlined in the appellate court's previous decision in *Thomas v. Dart*, 39 F.4th 835 (7th Cir. 2022). As set forth by the Seventh Circuit, "[t]o state a viable failure-to-protect claim under the Fourteenth Amendment, a pretrial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries." *Thomas*, 39 F.4th at 841.

Taking the elements in order, King must first demonstrate that Szul made an intentional decision regarding the condition of his confinement. King asserts that Szul intentionally caused

detainees to roam the dayroom unsupervised on March 29, 2019. PRDSOF ¶ 14; DRPSOAF ¶¶ 34-35. By not calling another officer to supervise while he went to provide backup, Szul was deliberate in his choice about leaving King and other detainees' alone in the dayroom – it was not accidental or unintentional. DRPSOAF ¶¶ 25, 35. Szul does not dispute this point. Thus, King has satisfied his burden of demonstrating a genuine dispute of fact on the first element.

The second element turns on whether there was a substantial risk and serious harm. This analysis is also determinative of the third element, because if there is no substantial risk of serious harm, then a reasonable officer in the circumstances would not have appreciated the risk. The Seventh Circuit has noted that "a beating suffered at the hands of a fellow detainee… clearly constitutes serious harm[.]" *See Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Here, there is no dispute that King suffered a beating at the hands of another detainee and was harmed. The operative inquiry then is whether there was a substantial risk of that harm occurring. *See Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (*citing Brown*, 398 F.3d at 910). The Seventh Circuit has found that the Fourteenth Amendment does not require a pretrial detainee to prove defendant's subjective awareness of the risk of harm. *See Davis v. Rook*, 107 F.4th 777, 780 (7th Cir. 2024) (*citing Kemp v. Fulton Cnty.*, 27 F.4th 491, 497 (7th Cir. 2022)). Instead, the detainee must only prove that a reasonable officer would: (1) appreciate the risk, and (2) address the risk. *Id.*; *see also Kemp*, 27 F.4th at 497; *Thomas*, 39 F.4th at 841; *Echols*, 105 F.4th at 974-75. To demonstrate a reasonable officer would "put the puzzle pieces together about the risk of harm, the detainee must show that the defendant actually received all the information about a potential health or safety risk." *Davis*, 107 F.4th at 780-81 (cleaned up); *Kemp*, 27 F.4th at 496. District courts are not to assume a reasonable officer is omniscient but review the facts the officer received. *Davis*, 107 F.4th at 781.

Instructive to this Court's analysis are the Seventh Circuit's holdings in *Kemp*, *Davis*, and *Thomas*. In *Kemp*, a pretrial detainee was injured by other detainees in an altercation. *Kemp*, 27 F.4th at 493. While Kemp yelled for help during the incident, no officer responded. *Id.* One of the on-duty officers was not wearing a prescribed hearing aid on the day of the incident. *Id.* The district court granted the defendant officer summary judgment on the claim of failure to protect, finding that no reasonable guard would have been on notice of a substantial risk of harm to Kemp. *Id.* at 494. The Seventh Circuit affirmed the district court, reasoning that Kemp did not present evidence that the officer was on notice of a serious risk of harm because Kemp admitted that he had never reported verbal disagreements, threats, or incidents to the Jail employees. *Id.* at 497. Since the detainees had been cohabitating peacefully for months, there was no record evidence that the officer should have been on notice of a substantial risk to Kemp's safety. *Id.*

Relying on *Kemp*, the Seventh Circuit in *Thomas* denied leave to amend a failure to protect claim, as it was futile. 39 F.4th at 841-42. Plaintiff Thomas was assaulted by another incarcerated individual. *Id.* at 838. He contended that residing within the general population with PTSD put him at a substantial risk of suffering serious harm. *Id.* at 842. The Seventh Circuit found that his housing in general population, even while suffering from PTSD, is not a particular enough risk for a failure to protect claim. *Id.* As noted by the appellate court, it is not a guard's job to anticipate every potential danger facing a detainee, but to "act responsibly under the circumstances that confront them." *Id.* Clarifying what qualifies a specific risk a reasonable officer would appreciate, "the risk must be somehow specific to a detainee, and not a mere general risk of violence." *Id.* at 843 (cleaned up). The Seventh Circuit noted that there was no evidence that Thomas' PTSD provoked, encouraged, or made his assault more likely. *Id.* Nor was there any evidence that the

incarcerated individual who assaulted Thomas had a propensity for violence. *Id.* Thus, allowing amendment of the failure to protect claim was futile. *Id.*

The final case, *Davis*, follows a similar fact pattern to *Kemp*. A detainee was injured in an altercation by others and brought a failure to protect claim against an officer. *Davis*, 107 F.4th at 781. The officer was unaware that there were verbal threats to the detainee's safety or that he had requested to be moved. *Id.* Further, the officer never spoke to the detainee and the detainee could only speculate that he may have complained to the officer. *Id.* Based on this evidence, the Seventh Circuit found "no basis for a jury to conclude that a reasonable officer…would have suspected imminent violence between Davis and the other detainees." *Id.* The Seventh Circuit went on to note that there was no possibility that a jury could also find that the officer failed to protect Davis merely by placing cleaning supplies in the vicinity, since the supplies presented no objectively perceptible risk of harm. *Id.*

In this case, as in *Kemp* and *Davis*, King did not inform anyone of a specific threat before the incident. *See Kemp*, 27 F.4th at 497; *Davis*, 107 F.4th at 781. King had never had a conversation, disagreement, or incident with Ortiz or any other detainee in Tier 3H. PRDSOF ¶¶ 18, 21-23, 26-27. He was never threatened with harm from Ortiz. *Id.* Nor had King been in a fight before the March 29 incident. *Id.* at ¶ 23. Unlike in *Davis*, where there was some speculation that the detainee may have complained to the officer, King admits he never told anyone at the Cook County Department of Corrections, including Szul, about a potential threat to his safety. *Id.* at ¶¶ 25, 28-30; *see Davis*, 107 F.4th at 781. There is also no record evidence that Szul was on notice of a potential threat to King or that a microwave was considered a risk of harm. *See, e.g.*, *Davis*, 107 F.4th at 781 (cleaning supplies placed in the vicinity presented no objectively perceptible risk of harm). As King did not appreciate or report any risk and had been cohabitating peacefully, the

factual record shows no evidence that Szul should have been on notice of a substantial risk to King's safety.

King counters that Szul was aware of the risk that a fight was likely when he left his post on March 29. Specifically, King alleges that Szul had common knowledge that fights were likely to occur based on additional facts, including that Szul: (1) left his post without calling backup; (2) did not conduct the 5:48 p.m. 30-minute security check; (3) knew about sources of danger (namely, the microwave) in the dayroom; and (4) failed to enforce rules and regulations. As outlined in *Thomas*, while "the specific risk a reasonable officer would appreciate need not be uniquely associated with the plaintiff or his attacker," it must be "somehow specific to a detainee, and not a mere general risk of violence." 39 F.4th at 842-43 (*citing Brown*, 398 F.3d at 915). King's contention concerns Szul's knowledge of a general risk of violence to all detainees and is not specific to King or Ortiz. King has presented no facts that Szul had specific knowledge of a risk to King (for example, that he was being targeted or threatened) or from Ortiz (for instance, that Ortiz was known to cause fights, had prior incidents with King, or made threats against him). Szul's common knowledge that fights were likely when detainees were in the dayroom is not sufficient to create a genuine dispute of material fact as to whether there was a substantial risk that serious harm might actually occur. Thus, King has failed to satisfy his burden of demonstrating a genuine dispute of fact on the second and third elements.

On the fourth and final failure to protect element, King has not raised factual disputes that Szul's deliberate choice caused King's injuries. Even if Szul had called for backup and that individual had seen the incident (or Szul had remained at his post), King has not offered facts to show that officer intervention would have occurred in sufficient time to prevent King from being struck and having hot water poured on him. *See, e.g.*, *Kemp*, 27 F.4th at 497 (finding no evidence

that an officer caused injuries or would have been alerted to a fight, despite his decision not to wear a hearing aid while on duty). As King cannot show factual disputes that Szul put him at a substantial risk of suffering serious harm or deliberately caused his injuries, as a matter of law, the motion for summary judgment on the failure to protect claim is granted.

Szul makes an additional point in support of summary judgment by arguing that he is entitled to qualified immunity. "Qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021) (cleaned up). The qualified immunity analysis at summary judgment is a two-step inquiry – whether defendant: (1) violated a constitutional right that was (2) clearly established at the time. *Thompson v. Cope*, 900 F.3d 414, 420 (7th Cir. 2018). Qualified immunity is an affirmative defense, but once raised, it is a plaintiff's burden to overcome the defense. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

Initially, the Court looks at whether King has shown that the law was clearly established (prong two). The Seventh Circuit has instructed that the analysis of the second element of qualified immunity should "focus [] on whether the officer had fair notice that [his or her] conduct was unlawful." *Taylor*, 10 F.4th at 806 (cleaned up). To satisfy this burden, King must "show either a reasonably analogous case that has both articulated the right at issue and applied it to factual circumstances similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Leiser*, 933 F.3d at 701. In other words, King needed to point to case law establishing that leaving a post to provide backup was unreasonable under the circumstances presented by this case. King has not done so. Instead, King only points to the broad generalization that prison officials have a duty to protect pretrial

detainees from physical harm inflicted by others.  That is insufficient.  *Davis*, in fact, is a reasonably analogous case that defeats King's assertions. *See Davis*, 107 F.4th at 781 (affirming summary judgment when a pretrial detainee was injured by another detainee, but no reasonable officer would have a basis to suspect imminent violence).  And on element one, at best, the record evidence exhibits that Szul was negligent in abandoning his post. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley*, 576 U.S. at 396.  Thus, King also fails to establish that he suffered a violation of a constitutional right. Accordingly, qualified immunity applies and also supports judgment as a matter of law.

## Conclusion

For these reasons, Defendant's motion for summary judgment [135] is granted.  Judgment is entered to Defendant Szul and against Plaintiff King on the remaining failure to protect claim.

**SO ORDERED.**

Dated:  March 5, 2025

Sunil R. Harjani
United States District Judge

10